IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY BETH PAPCIAK, o/b/o WANDA PAPCIAK, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 09-1354 |
| v. | ) ) | Magistrate Judge Bissoon[1] |
| KATHLEEN SEBELIUS, SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES | ) ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

*Introduction*

This is an appeal from the final decision of the Secretary of the Department of Health and Human Services ("Secretary") denying Medicare coverage under Part C of the Medicare Program for care provided to Wanda Papciak ("Plaintiff"), between July 10 through July 19, 2008. The administrative law judge (the "ALJ") found that Plaintiff did not require Medicare-covered skilled nursing services. The Medicare Appeal Counsel ("MAC") affirmed. Plaintiff contends that the decision denying coverage is not supported by substantial evidence in the record. Conversely, the Secretary asserts that the decision is supported by substantial evidence. The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court will deny the Secretary's motion

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. *See* Consent forms (Docket Nos. 10, 11).

for summary judgment and will grant Plaintiff's motion for summary judgment and will remand the case for instruction to award Plaintiff benefits.

## *Background*

At the time of the Secretary's decision, Plaintiff was 81 years old and had undergone a hip replacement surgery on April 28, 2008. Plaintiff received twenty days of therapy and was discharged to her home for home health care on May 22, 2008. Subsequently, Plaintiff developed a urinary tract infection and she was readmitted to the hospital. On June 3, 2008, Plaintiff was discharged by Dr. Tuchinda to ManorCare to receive skilled nursing care, physical therapy and occupational therapy. R. at 174, 225. Upon Plaintiff's admission to ManorCare, Plaintiff was unable to ambulate and could not use her walker due to numbness of her hands due to what was later diagnosed as carpal tunnel syndrome. R. at 279, 503, 686. Plaintiff also had a history of cellulitis, anemia, cholecystectomy, chronic atrial fibrillation, hypertension, anxiety and depression. R. at 506, 686.

Plaintiff received therapy five days a week; however, she made slow progress during her stay. R. at 295, 298. Plaintiff's therapy included physical and occupational therapy, treatment, self care, therapeutic exercises and therapeutic activities. Her initial treatment was primarily for ambulation. R. at 286, 295. Medicare paid for the skilled care Plaintiff received from June 3 through July 9, 2008. It was determined, however, that effective July 10, 2008, Plaintiff no longer needed skilled care because Plaintiff had made only minimal progress in some areas, had regressed in other areas, and had been determined to have met her maximum potential for her physical and occupational therapy. R. at 287, 300. As a result, Medicare denied payment from

July 10 through July 19 because Plaintiff was only receiving "custodial care," not the skilled nursing services required for Medicare coverage.

Subsequent to Plaintiff's treatment at ManorCare, Plaintiff was admitted to the UPMC South Side Emergency Room as an inpatient for a possible infection and generalized weakness. R. at 369. After three days in the hospital, she was transferred to a different facility, Baldwin Health Center. R. at 369, 657. At the new location, she was given physical therapy treatment. R. at 363. The treating physician determined that she would benefit from continued occupational therapy treatment. *Id*. This assessment proved to be accurate and she met three of her goals prior to discharge on August 21, 2008. R. at 355. Her physical therapist also expressed that she had good recovery potential. R. at 353.

Plaintiff appealed the decision denying coverage and the appeal was subsequently denied by Quality Insights of PA on July 9, 2008. R. at 194-196. On November 13, 2008, the ALJ held a telephonic hearing, and on November 20, 2008, the ALJ issued a decision denying Plaintiff Medicare coverage. R. at 77-83; 638-696. Plaintiff appealed that decision to the MAC. On August 6, 2008, the MAC upheld the ALJ's decision. R. at 1-7. The MAC decision is the final decision of the Secretary. 42 C.F.R. § 405.730. Therefore, Plaintiff has exhausted her administrative remedies and now seeks relief from this court.

### *Legal Standards*

Judicial review of the Secretary's denial of Medicare coverage is proper pursuant to 42 U.S.C. § 405(g). The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Secretary's final decision. Any

findings of fact made by the ALJ must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co v. NLRB*, 305 U.S. 197, 229 (1938)). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Secretary's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (citing *Richardson*, 402 U.S. at 401). In making his determination, the ALJ must consider all relevant evidence in the record and provide some indication of the evidence he rejected and why he rejected it. *Id.* at 48; *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Furthermore, the Court also must determine whether the Secretary applied the proper legal standard in denying Medicare benefits. *Beckett v. Leavitt*, 555 F. Supp. 2d 521, 526 (E.D. Pa. 2006); *see also Gartmann v. Secretary of HHS*, 633 F. Supp. 671, 681 (E.D.N.Y. 1986) ("A reviewing court, therefore, is compelled to accept the Secretary's supported findings of fact. A court, however, is not bound by the Secretary's conclusions or interpretations of law, or an application of an incorrect legal standard.") (citing *Kuebler v. Secretary of HHS*, 579 F. Supp. 1436, 1438 (E.D.N.Y. 1984); *Sokoloff v. Richardson*, 383 F. Supp. 234, 236 (E.D.N.Y. 1973); *Ridgely v. Secretary*, 345 F. Supp. 983, 988 (D. Md. 1972)).

<u>*Analysis*</u>

During the time period in question, Plaintiff was insured by Keystone Health Plan West / Highmark Security Blue, a Medicare Advantage plan. Medicare Advantage plans are required to cover the same medical services that Medicare would cover. 42 C.F.R. § 422.101. One of the

exclusions of coverage from Medicare is for expenses considered to be "custodial care." 42 U.S.C. § 1395y(a)(9). The regulations state that "custodial care is any care that does not meet the requirements for coverage as [skilled nursing facility ("SNF")] care as set forth in §§ 409.31 through 409.35 of this chapter." 42 C.F.R. §411.15(g).

Under the Medicare program, Skilled Nursing Care ("SNC") that is provided at an SNF is defined as services that:

> (1) Are ordered by a physician;
>
> (2) Require the skills of technical or professional personnel such as registered nurses, licensed practical (vocational) nurses, physical therapists, occupational therapists, and speech pathologists or audiologists; and
>
> (3) Are furnished directly by, or under the supervision of, such personnel.

42 C.F.R. §409.31(a). Furthermore, the level of care requirements for SNC is that "the beneficiary must require skilled nursing or skilled rehabilitation services, or both, on a daily basis" and "the daily skilled services must be ones that, as a practical matter, can only be provided in a SNF, on an inpatient basis." 42 C.F.R. § 409.31(b). Personal care services, such as general supervision and maintenance, which do not require the skills of qualified technical or professional personnel are not skilled services; however, special medical complications can render personal care services to be considered SNC. 42 C.F.R. §§ 409.32(b), 409.33(d).

Courts, in trying to distinguish "custodial care" from SNC, have been guided by two general principles. "First, the decision should be based upon a common sense, non-technical consideration of the patient's condition as a whole. Second, the Social Security Act is to be liberally construed in favor of beneficiaries." *Friedman v. Secretary of HHS*, 819 F.3d 42, 45

(2d. Cir. 1987) (citing *Gartmann v. Secretary of HSS*, 633 F. Supp. at 679; *Howard v. Heckler*, 618 F. Supp. 1333 (E.D.N.Y. 1985); *Rivera v. Schweiker,* 717 F.2d 719, 723 (2d Cir.1983)). In *Ridgely v. Secretary,* 345 F. Supp. 983 (D. Md. 1972), Chief Judge Northrop stated:

> [T]he purpose of the custodial care disqualification in § 1395y(a)(9) was not to disentitle old, chronically ill and basically helpless, bewildered and confused people like [plaintiff] from the broad remedy which Congress intended to provide for our senior citizens. Rather, the provision was intended to stop cold-blooded and thoughtless relatives from relegating an oldster who could care for him or herself to the care of an [extended care facility] merely so that that oldster would have a place to eat, sleep, or watch television. But when a person is sick, especially a helpless old person, and when those who love that person are not skilled enough to take care of that person, Congress has provided a remedy in the Medicare Act, and that remedy should not be eclipsed by an application of the law and findings of fact which are blinded by bureaucratic economics to the purpose of the Congress.

*Ridgely,* 345 F. Supp. at 993, *aff'd,* 475 F.2d 1222 (4th Cir.1973). As a result, "[t]he courts have interpreted custodial care to be care that can be provided by a lay person without special skills and not requiring or entailing the continued attention of trained or skilled personnel." *Kuebler*, 579 F. Supp. at 1438 (citing *Reading v. Richardson,* 339 F. Supp. 295, 300 (E.D. Mo. 1972)).

Plaintiff presents two arguments as to why the decision of the Secretary lacks the support of substantial evidence in the record. First, Plaintiff argues that the Secretary failed in only considering whether Plaintiff's condition would no longer materially improve with additional SNC. Plaintiff asserts that the Secretary is required to also consider whether SNC would be required to maintain Plaintiff's level of functioning. Second, Plaintiff argues that the Secretary failed to consider Plaintiff's condition as a whole, and ignored evidence in the record, in coming

6

to the conclusion that Plaintiff required only custodial care. Each argument will be addressed in turn.

### A. The Secretary Failed to Apply the Correct Legal Standard

Plaintiff argues that the Secretary failed to properly consider *Medicare Skilled Nursing Facility Manual* Chapter 2 §214.3 in that no consideration was given to Plaintiff's need for SNC to maintain her level of functioning. The relevant portion reads: "The services must be provided with the expectation, based on the assessment made by the physician of the patient's restoration potential, that the condition of the patient will improve materially in a reasonable and generally predictable period of time, **or** the services must be necessary for the establishment of a safe and effective maintenance program." *Skilled Nursing Facility Manual* Chapter 2 §214.3(A)(1), 2002 WL 34445032 (emphasis added). Plaintiff argues that the question of whether services were necessary for a maintenance program was not considered by the Secretary, and thus the Secretary failed to apply the proper legal standard.[2]

Plaintiff is correct that, in the decisions by the MAC and the ALJ, no discussion was provided as to a Plaintiff's potential need for a rehabilitative maintenance program. In the ALJ's decision, he concluded that "[i]t became apparent that no matter how much more therapy the Beneficiary received, she was not going to achieve a higher level of function." R. at 31.

---

[2] Interpretative guidelines of an agency's regulations "do not rise to the level of a regulation and do not have the effect of law." *Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 155 (3d Cir. 2004) (quoting *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 135 (3d Cir.1999)). However, such guidelines are persuasive interpretation of the agency's regulations, which are binding and carry the force and effect of law. *Griffin v. Harris*, 571 F.2d 767, 772 (3d Cir. 1978); *see also Howard Young Med. Ctr. Inc. v. Shalala*, 207 F.3d 437, 442-43 (7th Cir. 2000); *Adventist Living Ctrs., Inc. v. Bowen*, 881 F.2d 1417, 1423-24 & n. 10 (7th Cir. 1989).

Similarly, the MAC stated that "[d]espite the appellant's arguments to the contrary, the enrollee made little or no progress in therapy from the time of her admission to ManorCare through her discharge from skilled care on or around July 10, 2008." R. at 6. Nothing else in either discussion addresses whether plaintiff required SNC to maintain her level of functioning following her hip replacement.

The Secretary's regulations state that "[t]he restoration potential of a patient is not the deciding factor in determining whether skilled services are needed. Even if full recovery or medical improvement is not possible, a patient may need skilled services to prevent further deterioration or preserve current capabilities." 42 C.F.R § 409.32(c). Despite this, the Secretary concluded that Plaintiff lacked any future restoration potential and therefore no longer required SNC and only required "custodial care." Furthermore, the Secretary's decision lacks a sufficient discussion of the alternative reason for rehabilitative SNC. As a result, the decision denying Plaintiff Medicare coverage cannot be affirmed.

    B.    *The Secretary Failed to Consider Plaintiff's Condition as a Whole*

Plaintiff argues that the Secretary ignored evidence that Plaintiff was improving in her functional capacity. In particular, Plaintiff points out that she had improvement in the ability to use her hands and that she could stand with moderate assistance thus enabling her to begin to use a walker. Furthermore, subsequent to Plaintiff's treatment at ManorCare, Plaintiff's condition improved such that she was meeting her occupational therapy goals and had a positive outlook and engaged in group activities.

8

The MAC's decision stated that "[t]he record clearly and unequivocally reflects a patient who was unmotivated and resistant to participation in therapy throughout her entire stay." R. at 6. In making this finding, however, no consideration was given to Plaintiff's other impairments that were limiting her ability to progress in her functional capacity. In particular, Plaintiff was diagnosed as having anxiety and situational depression that affected her motivation to ambulate. R. at 219-20, 226. Plaintiff's depression also included symptoms of suicidal ideation and crying spells. R. at 288-90. In making the finding that Plaintiff had reached her maximum functional capacity, no consideration was given as to the treatment of Plaintiff's depression and anxiety and whether her physical capacity was being limited by her mental impairments. Indeed, in the progress notes subsequent to Plaintiff's treatment at ManorCare, it was noted that she had become more cooperative, was willing and able to participate in group activities with other residents and stated that she felt like she was doing better. R. at 356, 360.

Furthermore, Plaintiff points to treatment notes by Plaintiff's physicians indicating that she would benefit from continued rehabilitative care, as well as treatment notes that showed Plaintiff's improvement during and subsequent to Plaintiff's stay at ManorCare. On July 18, 2008, Dr. Alan Chu recommended that Plaintiff resume her occupational therapy. R. at 279. Similarly, Dr. Bhavank Doshi opined that Plaintiff would have continued to have benefited from skilled rehabilitative care during the period in question. R. at 155-56. Also, Plaintiff's subsequent treatment notes show that she had made progress with her occupational therapy and some limited progress with her physical therapy. R. at 342-62. Finally, in a note by Plaintiff's physical therapist dated October 20, 2008, it is stated that "she has made tremendous progress in transfers and ambulation. She is able to walk five feet, twice with walker and minimal assist. She is able to do transfer and walker and minimal assist." R. at 154.

Plaintiff is correct that this evidence was not discussed by the Secretary in the decision denying plaintiff Medicare coverage. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. As a result, the decision by the Secretary is not supported by substantial evidence.

Because the Secretary's conclusion that Plaintiff "could not reasonably have been expected to reach a higher level of function from further skilled therapy," R. at 5, is in direct conflict with the evidence that Plaintiff's physical capacity did improve subsequent to her stay at ManorCare, it is appropriate for this case to be reversed and remanded with instructions to award Plaintiff benefits. In considering the entire record as a whole, in light of the Secretary's regulations, the <u>only</u> possible conclusion that can be reached is that Plaintiff would have benefited from continued SNC during the relevant time because she had not yet reached her peak functional capacity. Indeed (and ironically), the facts of this case quite nearly mirror the example given in the *Medicare Skilled Nursing Facility Manual*.

> EXAMPLE 1: An 80-year-old, previously ambulatory, post-surgical patient has been bedbound for one week and, as a result, has developed muscle atrophy, orthostatic hypotension, joint stiffness and lower extremity edema. To the extent that the patient requires a brief period of daily skilled physical therapy services to restore lost functions, those services are reasonable and necessary.

*Skilled Nursing Facility Manual* Chapter 2 §214.3, 2002 WL 34445032. While Plaintiff's progress was slow during the period in question, the Secretary failed to consider the cause of Plaintiff's slow progress and whether it was, in fact, a permanent limitation. Because the record, when considered as a whole, indicates that Plaintiff would have benefited from SNC during the period in question, this case will be reversed and remanded to the Secretary with instruction to award Plaintiff benefits.

Accordingly, the Court hereby enters the following:

## II. ORDER

Defendant's Motion for Summary Judgment (**Doc. 15**) is **DENIED**; Plaintiff's Motion for Summary Judgment (**Doc. 13**) is **GRANTED**; and this case is **REMANDED FORTHWITH** for the calculation and award of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

September 28, 2010

s/Cathy Bissoon
Cathy Bissoon
United States Magistrate Judge

cc (via email):

All Counsel of Record